# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GINA LEWANDOWSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16 C 9317 |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Gina Lewandowski seeks review of an administrative law judge's decision that she is not entitled to disability insurance benefits or supplemental security income benefits. Lewandowski argues that the ALJ improperly discounted the opinion of her treating physician, improperly discounted her credibility, and failed to fully consider her mental impairments when making a determination on her residual functional capacity. She has appealed the decision and has moved for summary judgment. Carolyn Colvin, the Acting Commissioner of Social Security, has cross-moved for summary judgment and asks the Court to uphold the decision. For the reasons stated below, the Court grants Lewandowski's motion for summary judgment, denies the Commissioner's motion, and remands the case for further consideration.

## Background

Lewandowski filed for disability insurance benefits and supplemental security income on October 10, 2012. She stated that she suffered from depression, bipolar

disorder, high blood pressure, and high cholesterol. R. 257. Lewandowski alleged a disability onset date of April 30, 2009.

The Social Security Administration (SSA) denied Lewandowski's application on March 28, 2013 and again upon reconsideration on October 4, 2013. Lewandowski then filed a written request for a hearing. On October 21, 2014, Lewandowski appeared with her attorney at a hearing before an administrative law judge. Lewandowski testified at the hearing, along with Kari Seaver, a vocational expert. The ALJ issued her decision on December 10, 2014, concluding that Lewandowski is not disabled.

In her decision, the ALJ applied the five-step sequential evaluation process established by the SSA to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ determined that Lewandowski meets the insured status requirements of the Social Security Act. R. 19. At step two, the ALJ determined that Lewandowski had not engaged in substantial gainful activity since the alleged onset date. *Id.* at 19. At step three, the ALJ determined that Lewandowski suffers from the following severe impairments: depression / bipolar disorder, anxiety, cocaine addiction, alcohol abuse, degenerative disc disease of the lumbar spine, and obesity. *Id.* at 20.

At step four, the ALJ evaluated Lewandowski's impairments and determined that her impairments, either separately or in combination, do not meet or medically equal the severity of an impairment listed in 20 CFR § 404. *Id.* at 20. First, the ALJ evaluated Lewandowski's back impairment. She noted that the applicable listing, section 1.04, requires evidence of a compromised nerve root with abnormal clinical findings such as motor loss, sensory or reflex loss, and positive straight leg raising. The ALJ determined that Lewandowski had not shown any of those abnormal findings to exist on a

2

consistent basis. The ALJ next considered Lewandowski's mental impairments and determined that they did not meet or medically equal the criteria of listing 12.04 or 12.06. The ALJ noted that, in order to satisfy the criteria, the mental impairments must result in at least two of the following: restriction of daily living activities; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation of extended duration. The ALJ found that Lewandowski has moderate restriction in activities of daily living. In doing so, the ALJ noted Lewandowski's decreased motivation to change into new clothes and shower on a daily basis but pointed to Lewandowski's ability to do laundry and clean around the house. The ALJ stated that the reason Lewandowski does not drive is not because she is unable but because she lacks insurance. She also stated that Lewandowski reported using public transportation and riding a bicycle to get to appointments. Finally, she said that the fact that Lewandowski had lost a substantial amount of weight over an extended period of time points to capability in this area as well as an ability to maintain concentration, attention, persistence, or pace.

The ALJ next concluded that Lewandowski has moderate difficulties in social functioning. She stated that although Lewandowski has no friends, she "is doing well with her family." *Id.* at 21. She stated that Lewandowski regularly attends Alcoholics Anonymous meetings and participates in and pays attention to discussion at group therapy sessions. The ALJ also concluded that Lewandowski has moderate difficulties with concentration, persistence, or pace. She noted that Lewandowski "has alleged difficulties with focus and memory but acknowledged that the only reason she does not have a driver's license is due to insurance issues." *Id.* She cited the results of a March

3

2013 consultative examination, in which the examiner indicated that Lewandowski had a coherent stream of conversation, good attention and concentration, and excellent short-term memory. The ALJ noted that, with the help of reminders from her father, Lewandowski has never missed a doctor's appointment. Finally, she stated that Lewandowski has no trouble paying bills, counting change, and using a check book. The ALJ concluded by noting that Lewandowski has no episodes of decompensation.

At step five, the ALJ concluded that Lewandowski has the residual functional capacity (RFC) to perform medium work, with the following exceptions:

- she can learn, understand, complete, and sustain routine tasks;
- she can have no more than occasional, superficial interaction with the general public;
- she can have no more than occasional interaction with co-workers;
- she can engage in no team work or tandem tasks;
- she can handle no more than occasional changes in the work task; and
- she can tolerate no more than occasional decision making.

*Id.* at 22.

The ALJ began by providing a detailed overview of Lewandowski's allegations regarding her impairments and their impact on her daily activities. The ALJ then concluded that, although Lewandowski has some difficulties due to her diagnosed depression, anxiety, and substance abuse, the evidence does not support her claims of impairment. *Id.* at 26. The ALJ noted that despite a "commonly depressed or anxious mood or affect, [Lewandowski] never showed any problems with memory, concentration, or interaction." *Id.* The ALJ stated that both during group therapy sessions at Cermak Health Services and while incarcerated, Lewandowski exhibited an

4

improvement in mood, ability to think, and self-control. The ALJ noted that Dr. Gordon reported some crying episodes and trouble sleeping, but that "these symptoms were circumstantial." *Id*. The ALJ stated that by 2014 Lewandowski "appeared to have resolved all of her issues." *Id*.

The ALJ likewise concluded that the evidence does not support Lewandowski's allegations of impairment due to back pain. She noted that Lewandowski stopped taking pain medications in August 2013 and that her weight loss led to decreased pain. The ALJ then concluded that the objective medical evidence does not provide a basis for finding limitations greater than those determined in the decision.

The ALJ also considered and discounted the opinion of Dr. Gordon, Lewandowski's treating physician. Dr. Gordon had opined that Lewandowski's mental impairments would prevent her from working for more than 15% of an eight-hour work day, understanding and carryout instructions, and working in coordination with others, among other things. The ALJ decided to give this opinion "some weight"—instead of controlling weight—in light of inconsistencies she identified in Dr. Gordon's report. *Id*. at 27–28. First, the ALJ pointed out that Dr. Gordon reported intellectual limitations but had never performed any I.Q. testing or diagnosed Lewandowski with an intellectual impairment. The ALJ also noted that despite the limitations that Dr. Gordon identified, she also indicated that Lewandowski's prognosis was fair to good. Finally, Dr. Gordon indicated that Lewandowski has severe restrictions in memory, understanding instructions, and using public transportation. But in another report, Dr. Gordon indicated that Lewandowski has no difficulty with memory or thought processes and that she was capable of using public transportation. The ALJ concluded that, because of these

5

inconsistencies, Dr. Gordon's opinion was entitled only to "some weight."

At the final step in the analysis, the ALJ concluded that jobs exist in the national economy that Lewandowski can perform given her age, education, work experience, and RFC. *Id.* at 29. The ALJ therefore denied Lewandowski's requests for disability insurance benefits and supplemental security income benefits. On May 14, 2016, the Appeals Council denied Lewandowski's request for review. *Id.* at 1. As a result, the ALJ's decision became the final decision of the Acting Commissioner

**Discussion**

Lewandowski has appealed the ALJ's denial of her request for benefits pursuant to 42 U.S.C. § 405(g). She has moved for summary judgment, asking the Court to reverse the decision of the ALJ or to remand for a rehearing. Colvin has cross-moved for summary judgment, asking the Court to affirm the denial of benefits.

The Court will affirm the decision of the ALJ if it is supported by "substantial evidence." *Casey v. Berryhill*, 853 F.3d 322, 326 (7th Cir. 2017). "Substantial evidence" is evidence "that a reasonable mind might accept as adequate to support the conclusions at issue." *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016) (internal quotation marks omitted). The Court affords deference to the ALJ, but the ALJ "must provide an accurate and logical bridge between the evidence and the conclusion that the claimant is not disabled." *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

Lewandowski contends that the ALJ erred by 1) failing to assign controlling weight to Dr. Gordon's opinion and failing to explain her reasons for doing so; 2) negatively assessing Lewandowski's credibility; and 3) underestimating the significance of Lewandowski's mental impairments. The Acting Commissioner argues that the ALJ's

6

findings were reasonable, supported by substantial evidence, and explained adequately. The Court addresses each argument below.

### A. Dr. Gordon's opinion

When considering an application for benefits, a treating physician's opinion regarding the nature and severity of a medical condition is typically entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2)). Thus if an ALJ finds that either of these criterion is not met, she is not required to assign controlling weight to the opinion. An ALJ who does not give controlling weight to a treating physician's opinion "must offer good reasons for declining to do so." *Id* (internal quotation marks omitted). But even if an ALJ decides not to give controlling weight to a treating physician's opinion, she is not permitted to simply discard it. *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). She must determine what weight to give the opinion and provide reasons for making the determination.

The ALJ in this case determined that, due to their ongoing treatment relationship, Dr. Gordon qualifies as Lewandowski's treating physician, and neither party has challenged this determination. R. 27. The ALJ then determined that Dr. Gordon's opinion was inconsistent with other substantial evidence and therefore declined to grant the opinion controlling weight. Lewandowski contends that this was erroneous.

The Court disagrees. The ALJ pointed out numerous inconsistencies between Dr. Gordon's report and other evidence in the record that support her decision. In the mental RFC statement Dr. Gordon completed in September 2014, she indicated that

7

Lewandowski has "intellectual limitations" that would affect her ability to work a full work-week. *Id.* at 883. But Dr. Gordon also acknowledged that she has never assessed Lewandowski's I.Q., and Lewandowski has never been diagnosed with any intellectual disability. *Id.* Further, when asked in the mental RFC statement to rate Lewandowski's mental abilities to function independently, she rated her in category IV in understanding and remembering detailed instructions. *Id.* at 882. A rating in category IV precludes performance for 15% or more of an 8-hour workday. In a September 2013 psychiatric report, however, Dr. Gordon indicated that Lewandowki's memory was intact and that she had logical thought processes. *Id.* at 868. Dr. Gordon also rated Lewandowski in category IV for traveling in unfamiliar places or using public transportation, *id.* at 883, but in her earlier report indicated that Lewandowski did not have any serious limitations with independent public transportation, *id.* at 869. Finally, the ALJ found Dr. Gordon's conclusion that Lewandowski has limitations with the ability to independently initiate, sustain, or complete tasks to be contradicted by her indications that Lewandowski is able to complete household duties and use public transportation. *Id.* at 28. One can certainly imagine ways to reconcile these apparently divergent conclusions by Dr. Gordon, but that is not the issue on review. The ALJ therefore provided sufficient explanation for her belief that Dr. Gordon's opinion contains internal inconsistencies that prevent the ALJ from assigning the opinion controlling weight. *See Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007).

     Lewandowski argues that the ALJ has mischaracterized these inconsistencies. She argues first that "performing household chores is not inconsistent with being unable to engage in substantial gainful activity." Mem. in Supp. of Mot. for Summ. J. at 9.

8

That, of course, is true. But the ALJ did not conclude that because Lewandowski can perform household chores, she is able to pursue full-time employment. Rather, the ALJ indicated only that this ability calls into question Dr. Gordon's conclusion that Lewandowski cannot independently initiate, sustain, or complete tasks. Although household chores may not be a good indicator of whether someone can sustain full-time employment, they may provide information regarding an individual's mental capacities.

Lewandowski also argues that ALJ made "inapt comparisons" in her analysis of the opinion by a consulting physician, Dr. Ostrowski. *Id.* at 10–11. It is true that some aspects of Dr. Ostrowski's report support Dr. Gordon's opinion. For example, Dr. Ostrowski concluded that Lewandowski has "mood swings with severe depression and anxiety" and "severe psycho-social and environmental problems." R. 795. But Dr. Ostrowski also determined that she has "excellent attention, concentration and short term memory," which seems to contradict Dr. Gordon's conclusions regarding Lewandowski's ability to focus. *Id.* at 793. Thus the ALJ did not clearly err in determining that Dr. Ostrowski's opinion did not support that of Dr. Gordon. The Court therefore concludes that the ALJ provided adequate reasons for her decision not to give controlling weight to Dr. Gordon's opinion.

Once the ALJ decided that Dr. Gordon's opinion would not receive controlling weight, she was required to determine what weight the opinion should receive. Social Security regulations require the ALJ to consider the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the opinion is supported by relevant evidence, whether the opinion is consistent with the record as a whole, and whether the treating physician is a specialist in the

relevant area. *Scrogham*, 765 F.3d at 697.

The ALJ in this case failed to adequately explain her determination of how much weight to assign to Dr. Gordon's opinion. As described above, the ALJ outlined inconsistencies within Dr. Gordon's records and then concluded that the opinion should be afforded "some weight." R. 28. She did not, however, engage in any discussion of Dr. Gordon's longstanding therapeutic relationship with Lewandowski. She did not discuss whether Dr. Gordon's opinion was supported by most of the other evidence in the record, such as Lewandowski's testimony at the hearing or the third-party function report completed by Lewandowski's father. Nor did she discuss whether Dr. Gordon has any relevant specializations. Although the Seventh Circuit has indicated that an ALJ is required only to minimally articulate her reasons for discounting a medical opinion, the ALJ's discussion in this case did not meet this standard. *See Elder v. Astrue*, 529 F.3d 408, 415–16 (7th Cir. 2008) (finding that the ALJ met the minimal articulation standard where he discussed the physician's specialty, the thoroughness of the patient examinations, and subsequent treatment of the claimed impairments).

This conclusion alone is sufficient to warrant remand to the ALJ for further discussion. Although Colvin argues that the ALJ adequately explained her reasons, she does not—and cannot—point to anywhere in the opinion where the ALJ addressed the factors discussed above.

### B. Credibility assessment

Lewandowski next contends that the ALJ erred when she did not accept Lewandowski's allegations regarding her impairments and concluded that she "is not as disabled as she alleged." R. 26. "An ALJ is in the best position to determine a

10

witness's truthfulness and forthrightness."  *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).  Therefore a court will not overturn an ALJ's credibility determination unless it is "patently wrong."  *Id.*  An ALJ's credibility determination will be affirmed as long as the ALJ gives specific reasons that are supported by the record for his finding.  *Id.* at 505.

The Court concludes that the ALJ did not err in her credibility determination regarding Lewandowski's claims of impairment.  When discussing Lewandowski's depression and anxiety, the ALJ focused on Lewandowski's allegations regarding her memory and her inability to focus.  The ALJ noted that she never exhibited any problems with memory, concentration, or interaction.  R. 26.  The ALJ pointed to Lewandowski's group therapy with Cermak Health Services, during which she had a significant improvement in mood, ability to think, function and control herself.  *Id.*  The ALJ noted that despite Dr. Gordon's mention of crying episodes, trouble sleeping, and suicidal thoughts, she did not refer Lewandowski to inpatient treatment.  *Id.*  By 2014, Lewandowski reported an improved mood.  *Id.*  The ALJ concluded that Lewandowski's allegations regarding impairment in memory and concentration were not credible.  *See id.*  The ALJ provided specific reasons for this determination, and the determination is not "patently wrong."

The ALJ next considered Lewandowski's allegations regarding physical impairments and similarly found Lewandowski to be lacking credibility.  *Id.*  The ALJ noted that by August 2013, Lewandowski was no longer taking pain medication. Further, she lost a significant amount of weight, which she indicated helped decrease her pain.  And she indicated in her testimony that even when she required medication for the pain, she was able to function normally once the medication took effect.  *Id.* at

49–50. The Court therefore concludes that the ALJ provided sufficient explanation for her determination that Lewandowski's allegations regarding her physical impairments lacked credibility.

The Court does wish to point out a problem with one aspect of the ALJ's determination. In assessing Lewandowski's credibility regarding her physical limitations, the ALJ noted that she was "able to perform physically demanding activities such as . . . stealing copper rain gutters." *Id.* at 27. But there is nothing in the record which indicates that Lewandowski herself engaged in physically demanding activity in order to steal these gutters. Although Lewandowski was the only one convicted for this theft, she testified that she acted with her boyfriend and that she took the fall in order to protect him. *Id.* at 41–42. Therefore it is entirely possible—and perhaps likely—that her boyfriend is the one who undertook the physically demanding aspects of the job. In light of Lewandowski's other testimony regarding her back pain, however, the Court cannot conclude that this statement is enough to render the ALJ's credibility determination "patently wrong."

Lewandowski challenges the ALJ's credibility determination primarily by arguing that the ALJ "cherry pick[ed]" evidence regarding Lewandowski's mental illness that supported her conclusion and also demonstrated a general misunderstanding of mental illness. Mem. in Supp. of Mot. for Summ. J. at 11–12. The Court agrees that these arguments have merit but reserves this discussion for the following section, which addresses whether the ALJ erred in determining that Lewandowski does not exhibit a listed mental impairment or its equal.

## C. Effects of mental impairments

Lewandowski argues that the ALJ failed to give proper consideration to the effects of her mental impairments—specifically, depression, bipolar disorder, and anxiety—when determining her functional capacity. An ALJ's determination of a claimant's RFC must be supported by substantial evidence in the record. *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000). Further, the ALJ's analysis must enable the reviewing court to trace the path of her reasoning. *Id.* at 874. The ALJ therefore "must take into account significant evidence that would support the opposite conclusion" and provide her reasons for rejecting this evidence. *Id.*

The ALJ did not adequately consider the effects of Lewandowski's depression, anxiety, and bipolar disorder when determining her RFC. The ALJ first determined that, despite Lewandowski's diagnoses, she has only moderate restriction in activities of daily living. The ALJ noted that Lewandowski used to work as a housecleaner, is currently capable of doing laundry, and has lost a significant amount of weight over an extended period of time. But the Seventh Circuit has repeatedly indicated that ability to perform household chores do not per se equate to an ability to maintain full-time employment and that the ALJ is required to explain how these particular tasks might relate to employment available to the claimant. *See Alaura v. Colvin*, 797 F.3d 503, 506 (7th Cir. 2015) ("How being able to feed cats, make a sandwich, etc. prepare one for full-time employment as a retail marker, hand packager, or addresser was left unexplained."). The ALJ also stated that Lewandowski's ability to use public transportation and her substantial weight loss speak to her ability to maintain concentration, attention, persistence, or pace. R. 20. But the ALJ did not consider whether there is a difference

13

between completing these "sporadic physical activities" and the ability "to work eight hours a day five consecutive days of the week." *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004).

Further, as Lewandowski notes, the ALJ seemed to largely disregard Lewandowski's own testimony about her ability to function on a daily basis. The ALJ acknowledged in a single sentence that Lewandowski regularly lacks the motivation to change or shower. R. 20. But she failed to address the remainder of the evidence, which paints the picture of an individual whose depression, bipolar disorder, and anxiety often prevent her from ever leaving the house and from taking care of even menial tasks while at home. Lewandowski testified that she has lost the ability to focus and follow through on simple tasks, and spends most of her time on the couch. *Id.* at 39. She is constantly fatigued, possibly as a side effect of her various medications, and she meets with Dr. Gordon once a month for treatment, which is as often as she can afford. *Id.* at 40–41. During the day, Lewandowski is so depressed that she cannot brush her hair nor do anything to maintain her hygiene. *Id.* at 47. She generally spends the day watching television but cannot sit still through a single program. *Id.* at 48. She indicated that she cleans the house only when something falls. *Id.* Lewandowski previously lived with her mother, who eventually kicked her out due to the fact that she failed to do anything all day. *Id.* at 54. Dr. Gordon has also diagnosed Lewandowski with post-traumatic stress disorder, and Lewandowski reports suffering from intrusive thoughts and night terrors related to this trauma. *Id.* at 41–43. The ALJ failed to address any of this testimony when determining that Lewandowski has only moderate restriction in daily activities.

14

The ALJ made similar errors when considering Lewandowski's social functioning. The ALJ briefly mentioned that Lewandowski has no friends but then focused primarily on her ability to participate during discussions at group therapy. Thus the ALJ again ignored all of Lewandowski's own testimony regarding her condition. Lewandowski testified that she cannot bring herself even to step out on the balcony of her apartment, because leaving the house for any reason causes intense social anxiety. *Id.* at 39–40. She is constantly worried that others are judging her because of her past and her current condition. *Id.* at 60. She is unable to approach people and cannot talk to others one-on-one. *Id.* at 64. She recognizes that she has to put in substantial effort to alleviate her condition, *id.* at 45, but she has been so crippled mentally by her impairments that she voluntarily conceded care of her 17-year-old son to her father because she is incapable of taking care of herself, let alone another person. *See id.* at 45–46. She testified that she does not have any social activities; she does not visit friends nor do any friends visit her. *Id.* at 47. And even though the ALJ noted that she has a good relationship with her family, *id.* at 21, Lewandowski testified that she avoids family functions because she cannot avoid the feeling that she becomes the center of attention. *Id.* at 48. The ALJ does not explain how an individual with this level of social incapacitation would be capable of finding and maintaining full-time, gainful employment.

Further, the ALJ repeatedly interpreted as weighing against mental impairment evidence that is, at best, neutral. For example, the ALJ noted that Lewandowski was able to remember to take medications while in prison and participate in conversations during group therapy. *Id.* at 27. The ALJ indicated that this evidence suggests

15

Lewandowski "is able to function on a much higher level than she alleges." *Id*. But Lewandowski's ability to comply with these programs while incarcerated—a time in which her every move is regimented and she is required to exercise almost no independent control over her routine—says little about whether Lewandowski is able to maintain these activities once at home. At other times, the ALJ used Lewandowski's incarceration to explain away behaviors—such as trouble sleeping and crying episodes—as "circumstantial," *id*. at 26, despite the fact that both Dr. Gordon and Lewandowski reported symptoms that included fatigue and extreme sadness during times when she was not incarcerated.

It therefore appears that the ALJ selected statements that support a conclusion of moderate impairment while failing to engage with the ample evidence pointing towards something more severe. One might argue that the ALJ did this because she had already made a negative determination regarding Lewandowski's credibility and therefore chose not to discuss the weight of her testimony. But ALJ's discussion on Lewandowski's credibility contained almost no mention of her depression, bipolar disorder, and anxiety, not to mention these specific statements regarding her daily activities. *See id*. Instead, the ALJ focused on Lewandowski's ability to concentrate and her physical limitations. The very brief discussion of Lewandowski's mental impairments focused primarily on her memory and concentration, and did not address her inability to function on a daily basis.

Even if the ALJ had discussed Lewandowski's credibility on this issue, however, she would have found additional evidence that supports Lewandowski's testimony. Lewandowski's claim of mental impairment is supported by the reports of both Dr.

Gordon and Dr. Ostrowski. Dr. Gordon noted that Lewandowski was depressed, anxious, and fearful. *Id.* at 868. She listed Lewandowski's thought content as guilt, worthless, hopeless, and helpless. *Id.* Dr. Ostrowski likewise noted that Lewandowski had a flat affect and that her mood was "depressed and very sad." *Id.* at 792. He also stated that she manifested a great deal of anxiety throughout the examination. He ultimately diagnosed her with bipolar disorder—including mood swings with severe depression and anxiety—and severe psycho-social and environmental problems. *Id.* at 795. The reports of two physicians therefore support Lewandowski's allegations that she is crippled on a daily basis by these mental impairments. The ALJ's failure to fully assess the effect of Lewandowski's mental conditions is reversible error.

## Conclusion

For the reasons stated above, the Court grants Lewandowski's motion for summary judgment [dkt. no. 8] and denies Colvin's motion for summary judgment [dkt. no. 16]. The Clerk is directed to enter judgment remanding the case to the Social Security Administration for further proceedings consistent with this decision.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 11, 2017

17